**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **VE OPENING LLC,** | C.A. No. 7:25-cv-538 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **DROPBOX, INC.,** | **PATENT CASE** |
| Defendant. | |

<u>**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff VE Opening LLC files this Original Complaint for Patent Infringement against Dropbox, Inc., and would respectfully show the Court as follows:

## I.  <u>THE PARTIES</u>

1.     Plaintiff VE Opening LLC ("VE" or "Plaintiff") is a Texas limited liability company with its address at 17350 State Highway 249, Ste 220, Houston, TX 77064.

2.     On information and belief, Defendant Dropbox, Inc. ("Dropbox" or "Defendant") is a corporation organized and existing under the laws of Nevada with a place of business at 501 Congress Ave, Austin, Texas 78701. Defendant has a registered agent Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II.  <u>JURISDICTION AND VENUE</u>

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its

business in this forum, including at least a portion of the infringements alleged herein at its place of business at 501 Congress Ave, Austin, Texas 78701.

5.      Without limitation, on information and belief, within Texas and this District, Defendant has used the patented invention thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and this District, including at its place of business at 501 Congress Ave, Austin, Texas 78701.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas and this District.  Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case including at its place of business at 501 Congress Ave, Austin, Texas 78701.

7.       For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.   COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,916,079)

8.      Plaintiff incorporates the above paragraphs herein by reference.

9.      On March 13, 2018, United States Patent No. 9,916,079 ("the '079 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '079 Patent is titled

"Method and System for Enabling the Sharing of Information Between Applications on a Computing Device." A true and correct copy of the '079 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.    VE is the assignee of all right, title, and interest in the '079 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '079 Patent.  Accordingly, VE possesses the exclusive right and standing to prosecute the present action for infringement of the '079 Patent by Defendant.

11.    The invention in the '079 Patent relates to the field of methods for enabling the sharing of information between applications on a computing device.  (Ex. A at col. 1:15-17).

12.    The '079 Patent describes the technological problem that existed in the prior art. People relied on applications installed on computing devices, which are typically intended to address a particular function or a limited number of functions.  (*Id.* at 1:21-25).  For example, a calendar application may be used to schedule events and invite participants, whereas an email application can enable participants to message each other about the event.  (*Id.* at 1:25-28).  While each application on its own may be useful for a particular purpose, performance of a task may require the use of multiple applications.  (*Id.* at 1:29-31).  The multiple applications typically operate independently from each other; however, cooperation between the applications, such as through information sharing, would provide a better solution.  (*Id.* at 1:32-35).

13.    With the number of applications on computing devices continuing to grow, users may want or need to use several applications together to perform tasks rather than requiring separate use of each application.  (*Id.* at 1:36-39).  However, setting up the sharing of information between multiple applications may be difficult and confusion for a typical user and may be tedious even for an advanced user, particularly when the number of applications required to complete a

3

task is large.  (*Id.* at 1:39-43).  Therefore, there is a need for methods that enable sharing of information between multiple applications to allow users to perform related tasks in a more efficient and user-friendly manner.  (*Id.* at 1:43-46).  Recognizing the need, the inventor created a new technological method for sharing information between applications on a computing device related to searching across multiple applications and linking information between such applications.  (*Id.* at 1:50-64).  The claimed invention enables typical or basic users to take advantage of information sharing across multiple applications even though the users may not otherwise attempt such a challenge.  (*Id.* at 6:35-40).  The invention also results in time savings and efficiency in setting up information-sharing that may be realized even by sophisticated users of the computing device. (*Id.* at 5:40-42).

14.  **Direct Infringement.**  Upon information and belief, Defendant directly infringes claims 1, 4, 5, and 6  of the '079 patent in Texas, in this District and elsewhere in the United States, by performing actions comprising using or performing the claimed method of enabling the sharing of information between a first application and a second application on a computing device by using and offering for sale Dropbox Dash ("Accused Instrumentality").

15.  Dropbox, through its use of Dropbox's Dropbox Dash product, performs a method of enabling the sharing of information between a first application and a second application on a computing device.  Dropbox Dash can search across Dropbox and any connected apps in a single search bar.  Dropbox's official website describes the purpose of Dash, which alleviates the problem of searching information that is in multiple applications.  In the citation below, Dropbox states: "Now that work spans hundreds of tabs and apps between your desktop and browser, it's painstaking to find what you need. That's why we recently introduced Dropbox Dash,…." (https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).

Similarly, the '079 patent discloses the same efficiency goal: "the method and system provide an easy way for information from multiple applications on the computing device to be shared. Such a feature may enable typical or basic users to take advantage of information sharing across multiple applications, as those users may not otherwise even attempt such a challenge. In addition, time savings and efficiency in setting up the information sharing may be realized, even for sophisticated users of the device."  (Ex. A at 6:35-42). Dropbox uses the term "AI universal search" and "universal search" interchangeably in its public marketing documents.  Dash searches "within and beyond Dropbox," (*i.e.*, first and second apps). The "More about universal search" link goes to a page that gives examples of second apps that Dash can search.



(*E.g.,* https://dash.dropbox.com/plans).

first application

second application(s)

goal: time savings and efficiency

**Search all your tools, apps, and content with AI-powered Dropbox Dash**

Was it in an email? A chat thread? A shared doc? Now that work spans hundreds of tabs and apps between your desktop and browser, it's painstaking to find what you need. That's why we recently introduced **Dropbox Dash**, AI-powered universal search that connects your tools, content, and apps in a single search bar to help you locate your content.

Dash is now available to download in open beta and includes enhancements that make it easier to find the information you need. Over the past few months, we've iterated based on customer feedback and are excited to introduce support for search by keywords, so you don't have to remember long titles. And with semantic search, you can get more contextually relevant search results. Plus, you can ask Dash a question and it will use generative AI to gather and summarize relevant info from your connected apps, files, and content to get you **answers**, fast.

**Search all your tools, apps, and content with AI-powered Dropbox Dash**

Was it in an email? A chat thread? A shared doc? Now that work spans hundreds of tabs and apps between your desktop and browser, it's painstaking to find what you need. That's why we recently introduced **Dropbox Dash**, AI-powered universal search that connects your tools, content, and apps in a single search bar to help you locate your content.

Dash is now available to download in open beta and includes enhancements that make it easier to find the information you need. Over the past few months, we've iterated based on customer feedback and are excited to introduce support for search by keywords, so you don't have to remember long titles. And with semantic search, you can get more contextually relevant search results. Plus, you can ask Dash a question and it will use generative AI to gather and summarize relevant info from your connected apps, files, and content to get you **answers**, fast.

universal search: a method of enabling the sharing of information between a first application and a second application

(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).

6



(*E.g.*, https://dash.dropbox.com/#:~:text=Dash%20lets%20your%20users%20instantly,Content%20control%20with%20one%20click).



(*E.g.*, https://dash.dropbox.com/#:~:text=Dash%20lets%20your%20users%20instantly,Content%20control%20with%20one%20click).



(*E.g.*, https://dash.dropbox.com/features/connected-apps).



(*E.g.*, https://dash.dropbox.com/features/universal-search).

### Dropbox Introduces Dropbox Dash, AI-powered Universal Search, and Dropbox AI for Files

June 21, 2023

first application    second application(s)    📄 PDF Version

**Dropbox launches Dropbox Ventures to invest in the AI startup ecosystem and shares AI Principles to guide product development**

SAN FRANCISCO--(BUSINESS WIRE)--Jun. 21, 2023-- Dropbox, Inc. (NASDAQ: DBX), today announced Dropbox Dash and Dropbox AI, new AI-powered product experiences designed to improve modern work and help customers get more out of their content. **Dropbox Dash** is a universal search tool that connects all tools, content, and apps in a single search bar; **Dropbox AI** applies generative AI to summarize and answer questions about content saved in Dropbox starting with file previews. The company is also building on its investment in AI with the launch of Dropbox Ventures, a new startup initiative to support the growing AI ecosystem, and renewing its commitment to applying AI responsibly with the introduction of its AI Principles.

"We're excited to roll out Dropbox Dash, AI-powered universal search, and Dropbox AI for file summarization and Q&A, today to help our customers search, organize, and gain insights from not only their files but all of their cloud content," said Drew Houston, co-founder and CEO of Dropbox. "The AI chatbots that have captured our imaginations are incredibly powerful but come with a major limitation: when you ask a question about yourself, your content, or your company, these chatbots can't answer it because they aren't connected to your information. Dropbox is filling that gap by building personalized AI. As a platform that over 700 million customers already trust to secure their most important information, we have a significant opportunity to improve our customers' working lives with personalized AI-powered product experiences. Today's launch is just the beginning, and we can't wait to leverage the power of AI to deliver even more value to our customers."

(*E.g.,* https://investors.dropbox.com/news-releases/news-release-details/dropbox-introduces-dropbox-dash-ai-powered-universal-search-and).

16.     Dropbox, through its use of Dropbox's Dropbox Dash product, performs the step of, from the first application, initiating a global search covering the first application and the second application.  For example, a user initiates a search request in Dropbox Dash to search Dropbox and other connected apps by clicking in the top search bar shown below.

9



(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).

# How to access the Dropbox Dash start page

You can access the Dash start page by going to dash.ai in a browser tab.

> ✦ **Tip:** When you add the Dropbox Dash browser extension, you can set all new browser tabs to open to the Dash start page. Learn how to add the Dropbox Dash browser extension.

(*E.g.*,      https://help.dropbox.com/view-edit/dropbox-dash-start-page#:~:text=Learn%20about%20the%20types%20of,View%20article).

# Dash start page features

**Search bar**

You can use the search bar at the top of the start page to navigate through four key actions:

- **Find:** Search for files and content from apps you or your admin have added to Dash

- **Ask:** Query your content with an AI tool and receive cited answers

- **Create:** Draft new content based on existing files, templates, and tone

- **Organize:** Create new stacks or add to existing stacks

The start page also offers personalized suggestions based on your history and an improved typeahead feature that helps you retrieve frequently accessed items directly as you type.

(*E.g.*,      https://help.dropbox.com/view-edit/dropbox-dash-start-page#:~:text=Learn%20about%20the%20types%20of,View%20article).



(*E.g.*, https://Dropbox.com/platform/document-management-system/).

      17.     Dropbox, through its use of Dropbox's Dropbox Dash product, performs the steps of receiving a global search request through the first application, wherein the global search request requests information across the first application and the second application; in response to the

11

reception of the global search request, prompting for a search term from a user.  For example, Dash receives a global search request for searching Dropbox and connected apps through selecting the search request box in Dash.  The search box prompts the user to enter search terms.



(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).

18.    Dropbox, through its use of Dropbox's Dropbox Dash product, performs the steps of receiving the search term; based on the received search term, automatically determining one or more corresponding candidate elements associated with the second application and presenting the determined one or more corresponding candidate elements associated with the second application for selection by the user.  In response to the search term being entered into the Dash search box, Dropbox Dash will search all connected apps and Dropbox information, and return results from these apps and Dropbox that are relevant to the query ("candidate elements") and display the elements in Dash.  The returned candidate elements include files that are from connected apps

other than Dropbox. For example, entering "company objectives" resulted in two candidate elements being displayed: one from Dropbox paper (an example of Dropbox being able to search itself, the first application) and another from Notion (second application).



(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).

19.    Dropbox, through its use of Dropbox's Dropbox Dash product, performs the steps of receiving the selection of at least one of the candidate elements; and linking information between the first application and the second application. For example, every search result for apps (both for Dropbox and connected app files) are displayed in Dash with a link to the file and excerpt or image from the file. The user can select the individual search results (candidate elements). Below the selected candidate element, there is a short preview showing a brief set of information from within the second application. This preview is part of linking information because it shows information from within the second application in the first application (Dropbox Dash / universal AI search).



(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).

20.     Dropbox, through its use of Dropbox's Dropbox Dash product, performs the step of, responsive to receiving the selection of the candidate element, linking the selected candidate element with the first application such that a user may access the selected candidate element from the first application.  For example, a user may click on the actual candidate element (here, the Company OKR).  This causes more information to be shown from the linked candidate element (OKR) often in more detail than the preview shown above. Publicly available evidence discloses a user clicking on a candidate element from the first application (*e.g.*, Dropbox).  Upon information and belief, information from a second application shown is also linked with the first application such that a user may access the selected candidate element from the second application (*e.g.*, Notion) from the first application. A user may select a candidate element from within Dropbox Dash as shown below. Dropbox Dash further describes how information (*e.g.*, Notion "Employee Welcome Guide") can be shared with a click.  This further indicates that a selected candidate element from a second application is linked.



(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).



(*E.g.*, https://dash.dropbox.com/solutions/sales).



(*E.g.*, https://dash.dropbox.com/solutions/engineering).

21.     Dropbox, through its use of Dropbox's Dropbox Dash product, performs the step of generating for the first application a selectable link that, when selected, is operable to enable access to information related to the second application.  For example, by clicking on the actual OKR, more detailed information is shown which is information from within Dropbox paper here.



(*E.g.*, https://blog.dropbox.com/topics/company/updated-tools-new-plans-and-web-redesign).



(*E.g.*, https://dash.dropbox.com/#:~:text=Dash%20lets%20your%20users%20instantly,Content%20control%20with%20one%20click).

22. Dropbox, through its use of Dropbox's Dropbox Dash product, performs the steps of receiving the selection of the linked selected candidate element through the first application; and responsive to the reception of the selection of the linked selected candidate element, presenting information related to the linked selected candidate element through the first application. For example, when a user selects one of the displayed candidate elements, Dropbox Dash will provide access to the second app information, such as file name, app, and who created the file. In the example below, a user has entered a search term, which searches both the first application (indicated by "Search Dash") and a number of second applications (for example, a Slack result called "cobalt-circle"). After the user enters a search, candidate elements are linked from a second

application.  Below, the second application is Google Drive and others. The second application (Google Drive document) is searched, and information is displayed through the first application (Dropbox Dash).



(*E.g.*, https://dash.dropbox.com/features/universal-search).



(*E.g.*, https://dash.dropbox.com/features/start-page).



(*E.g.*, https://dash.dropbox.com/use-cases/find-and-reuse-content).



(*E.g.*, https://dash.dropbox.com/use-cases/find-and-reuse-content).



(*E.g.*, https://dash.dropbox.com/use-cases/find-and-reuse-content).

23.    With respect to claim 4, Dropbox, through its use of Dropbox's Dropbox Dash performs the step of wherein the first application is in an active state and the second application is in a non-active state throughout the method.  The apps being searched are not necessarily open or active even when the search is being performed.

Dropbox Dash is AI-powered universal search that connects all of your tools, content, and apps in a single search bar. With connectors to major platforms like Google Workspace, Microsoft Outlook, Salesforce, and more, you can find *everything* in one place, fast. Now you can skip those time-consuming tasks like toggling between apps to share content, join a meeting, and find a deck your teammate shared. And because Dash is powered by machine learning, it learns, evolves, and improves the more you use it.

(*E.g.*, https://blog.dropbox.com/topics/product/introducing-AI-powered-tools).



(*E.g.*, https://dash.dropbox.com/features).



(*E.g.*, https://dash.dropbox.com/features/start-page).

24.    With respect to claim 5, Dropbox, through its use of Dropbox's Dropbox Dash performs the step of wherein the first application and the second application are part of a personal information manager application that is configured to support active and non-active states of the first and second applications, and wherein the first application is an active application and the second application is a non-active application running in the background of the computing device

throughout the method. Dropbox Dash has a Start page that is a personal information manager that is configured to support active and non-active states of the first and second applications. Centralized File Storage: Dropbox provides a single, cloud-based location for all of a user's digital files (documents, photos, videos, notes). This central repository is a cornerstone of personal information management, allowing the user to organize your digital assets. Dropbox Dash is explicitly designed to search across connected applications without requiring those applications to be actively open or in use in the user's browser or on your desktop. This is a fundamental aspect of its "universal search" and "federated search" capabilities, aimed at reducing "context switching" and "app toggling."



(https://dash.dropbox.com/#:~:text=Dash%20lets%20your%20users%20instantly,Content%20control%20with%20one%20click).



(*E.g.*, https://dash.dropbox.com/features/start-page).



(*E.g.*, https://dash.dropbox.com/features/start-page).



(*E.g.*, https://www.dropbox.com/dropbox).

25.    With respect to claim 6, Dropbox, through its use of Dropbox's Dropbox Dash performs the step of wherein the personal information manager application and the first and second applications are secure applications that are restricted from providing information to non-secure applications. Dropbox and Dropbox Dash are built with strong security and privacy principles to ensure data protection and control over information sharing.

**Access Control List (ACL) service**

Dash is designed to only give users access to content they are explicitly authorized for. With Dash, end users only have access to content they are authorized to view across any given company or user work app. To ensure partitioning and to maintain tenancy of the data/indices, ACLs and access are acquired when data is acquired from connected services. The ACL service contains data permission metadata that is matched and validated prior to returning a response, which ensures that only authorized results are returned to the user.

(*E.g.*,    https://www.dropbox.com/cms/content/dam/dropbox/warp/en-us/dash/Dash-Security-Architecture-Overview_Whitepaper.pdf).



(*E.g.*,    https://dash.dropbox.com/#:~:text=Dash%20lets%20your%20users%20instantly,Content%20control%20with%20one%20click).

24

26.     Defendant's customers also infringe claims 1, 4, 5, and 6 of the '079 Patent by using or performing the claimed method using the Accused Instrumentalities as described above.  Furthermore, Defendant advertises, markets, and offers for sale the Accused Instrumentalities to its customers for use in a system in a manner that, as described above, infringes claims 1, 4, 5, and 6 of the '079 Patent.  Exemplary advertising and marketing material is cited above.

27.     **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of at least claims 1, 4, 5, and 6 of the '079 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed at least one claim of the '079 Patent. For example, Defendant provides marketing material and videos advertising that the Accused Instrumentality performs the claimed method of enabling the sharing of information between a first application and a second application on a computing device as claimed in claim 1 of the '079 Patent.  (*Supra* ¶¶15-26 (identifying marketing materials and videos)).

28.     On information and belief, at least as early as the filing and service of the Original Complaint, since becoming aware of the '079 Patent and of the infringement through advertising and offering for sale the Accused Instrumentality for use by its customers, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the

Accused Instrumentality at least as early as the filing of the Original Complaint, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through specification sheets, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶15-26 (identifying marketing materials and videos)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '079 Patent by its customers.

29.     On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the Original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '079 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶15-26 (identifying marketing materials and videos)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '079 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused

Instrumentality infringes at least one claim of the '079 Patent, Defendant knew that each such new use was made and adapted for infringement of at least one claim of the '079 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶15-26 (identifying marketing materials and videos)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

30.    Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '079 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

31.    Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '079 Patent, Plaintiff will be greatly and irreparably harmed.

32.    The asserted claims of the '079 Patent are method claims to which the marking requirements are not applicable. Plaintiff has therefore complied with the marking statute, 35 U.S.C. §287.

## IV.  <u>JURY DEMAND</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against

Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of United States Patent No. 9,916,079 have been infringed, directly and indirectly, and either literally and/or under the doctrine of equivalents, by Defendant;

b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

c.    That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d.    That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

November 19, 2025                          DIRECTION IP LAW

                                           /s/ David R. Bennett
                                           David R. Bennett (Illinois Bar No. 6244214)
                                           Direction IP Law
                                           P.O. Box 14184
                                           Chicago, IL 60614-0184
                                           (312) 291-1667
                                           dbennett@directionip.com

                                           Attorneys for Plaintiff
                                           VE Opening LLC